UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

KEVIN LEE ROSS

    v.                                                                                       Civil No. 24-cv-013-LBM

JUDGE WOODCOCK, ET AL.[1]

### REPORT AND RECOMMENDATION

Self-represented Plaintiff Kevin Lee Ross filed a Complaint (Doc. No. 1) and additional documents the court construes as Complaint Addenda (Doc. Nos. 13, 15, 23-25, 27, 29, 43, 59-61, 64), alleging that the judge, prosecutor, and probation officers responsible for his current incarceration and underlying offenses, violated his rights under the United States Constitution and federal statutes. The Complaint is before the undersigned magistrate judge for preliminary review pursuant to 28 U.S.C. § 1915A(a). For the reasons explained below, the district judge should dismiss the Complaint in the entirety.

### BACKGROUND

*Violation of Supervised Release in 2013 Criminal Case*

On April 2, 2015, Mr. Ross, having been found guilty of one count of possessing child pornography, was sentenced to ninety months in prison, followed by five years of supervised release. See United States v. Kevin Lee Ross, No. 1:13-cr-158-LEW (D. Me.) ("2013 Criminal

---

[1] Plaintiff identifies the following defendants to this action in his initial Complaint (Doc. No. 1) and the documents the Court construes as addenda to the Complaint (Doc. Nos. 13, 15, 23-25, 27, 29, 43, 59-61, 64): Judge Woodcock, Prosecutor McCormack, United States Probation Officer ("USPO") Bryce Turgenson, USPO Ashley Hadam, and USPO Stacy Laflin. Plaintiff initially named two "unknown probation officers" as defendants to this case, but subsequently identified those defendants as USPOs Hadam and Laflin.

Case 1:24-cv-00013-LBM   Document 73   Filed 05/29/25   Page 2 of 14   PageID #: 268

Case") (ECF No. 95).  Mr. Ross was released from incarceration and commenced his term of supervised release on or about April 8, 2021.  See Prob. Officer's Req. for Compliance Hr'g, Apr. 25, 2022, 2013 Crim. Case (ECF No. 121).  At that time, United States Probation Officer ("USPO") Stacy Laflin met with Mr. Ross and provided him with "a copy of the conditions of supervision," and "discussed the expectations of conduct while on supervision."  Id.  It appears those conditions included refraining from the use of marijuana and alcohol.  See id.

On April 25, 2022, USPO Ashley Hadam filed a request for a Compliance Hearing, based on Mr. Ross's numerous violations of the conditions of his supervised release.  Id.  Specifically, USPO Hadam stated that Mr. Ross submitted drug tests which were "presumptive[ly] positive for marijuana" on November 3, 2021; November 30, 2021; December 7, 2021; January 6, 2022; January 18, 2022; February 1, 2022; February 8, 2022; February 15, 2022; February 22, 2022; February 24, 2022; March 1, 2022; March 8, 2022; March 15, 2022; March 22, 2022; and March 29, 2022.  Id.  The court in the 2013 Criminal Case held a Compliance Hearing on May 19, 2022.  See id. (ECF No. 128).  It does not appear that Mr. Ross was incarcerated for violating the terms of his supervised release at that time or punished for those violations with an incarcerative sentence.

On April 4, 2023, USPO Hadam filed a "Request for Modifying the Conditions or Term of Supervision With the Consent of the Offender," in the 2013 Criminal Case.  Id. (ECF No. 129). In that request, USPO Hadam asked to remove two special conditions of Mr. Ross's supervision and replace them with the following two conditions:

> Defendant shall participate and comply with the requirements of the Computer and Internet Monitoring Program (which may include partial or full restriction of computer(s), internet/intranet, and/or internet-capable devices), and shall pay for services, directly to the monitoring company. The defendant shall submit to

2

>periodic or random unannounced searches of his computer(s), storage media, and/or other electronic or internet-capable device(s) performed by the probation officer. This may include the retrieval and copying of any prohibited data. Or, if warranted, the removal of such system(s) for the purpose of conducting a more comprehensive search.
>
>A United States probation officer may conduct a search of the defendant and of anything the defendant owns, uses, or possesses if the officer reasonably suspects that the defendant has violated a condition of supervised release and reasonably suspects that evidence of the violation will be found in the areas to be searched. Searches must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation of release.

Id. Mr. Ross also signed a waiver, submitted with USPO Hadam's request, stating that he agreed to the requested changes to the conditions of his supervision and waived his right to a hearing and representation by counsel thereon. See id. (ECF No. 129-1). The Court granted that modification on April 4, 2023. See id. (ECF No. 130).

On April 5, 2023, USPO Hadam petitioned the Court to issue an arrest warrant for Mr. Ross based on violations of three conditions of his supervised release, for: (1) committing a federal crime, possession of child pornography, on April 5, 2023; (2) using a "controlled substance, alcohol or other intoxicant," as demonstrated by eighteen drug tests taken between November 30, 2021 and February 28, 2023 which were positive for marijuana; and (3) failing to comply with the requirements of the Computer and Internet Monitoring Program when "an unapproved and unmonitored . . . cell phone" and an "unapproved and unmonitored . . . laptop" were found in Mr. Ross's bedroom on April 5, 2023. Id. (ECF No. 131). The Court granted USPO Hadam's petition and issued an arrest warrant for Mr. Ross on April 5, 2023. Id. (ECF Nos. 132, 133). Mr. Ross was arrested on April 6, 2023. See id. (ECF No. 140).

On October 3, 2024, Judge Lance Walker[2] held a hearing on USPO Hadam's request to revoke Mr. Ross's supervised release, noting that Mr. Ross "did not contest" the charged violations of his supervised release. Id. (ECF No. 162). The court found Mr. Ross guilty of the violations, revoked Mr. Ross's supervised release, and sentenced Mr. Ross to serve twenty-four months in prison for those violations, with no supervised release to follow. Id.

### *2023 Criminal Case*

On July 19, 2023, Mr. Ross was indicted on one count of possession of child pornography, which appears to concern the same pornographic image underlying Mr. Ross's above-discussed violation of supervised release. See United States v. Kevin Lee Ross, No. 1:23-cr-073-LEW (D. Me.) ("2023 Criminal Case") (ECF No. 1). A jury convicted Mr. Ross of the offense charged on June 14, 2024. See 2023 Crim. Case (ECF No. 93). On October 3, 2024, Judge Walker sentenced Mr. Ross to a 121-month prison term, directed that sentence be served "consecutive to the sentence in the [2013 Criminal Case], and mandated, among other things, that Mr. Ross "comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) [("SORNA")]." Id. (ECF No. 111). Mr. Ross appealed his conviction in the 2023 Criminal Case, and his appeal remains pending. See United States v. Kevin Lee Ross, No. 24-1907 (1st Cir. Oct. 4, 2024).

### **PRELIMINARY REVIEW STANDARD**

In conducting preliminary review under 28 U.S.C. § 1915A(a), the court takes as true the facts asserted in the Complaint, and inferences reasonably drawn from those facts, strips away the

---

[2] Defendant Judge Woodcock presided over Mr. Ross's 2013 Criminal Case through trial and sentencing. On July 19, 2023, the case was reassigned to Judge Lance Walker, who presided over the 2023 supervised release violation proceedings at issue in this case.

legal conclusions, and considers whether the complaint states a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In determining whether a pro se complaint states a claim, the Court construes it liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The Court may dismiss claims if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief might be granted, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). Applying this standard, the Court relates the facts relevant to the claims in this action as set forth in the Complaint.

## CLAIMS

In the case before this Court, Mr. Ross asserts the following claims for relief against United States District Court Judge John Woodcock, Assistant United States Attorney ("AUSA") Andrew McCormack, and USPOs Bryce Turgenson, Stacy Laflin, and Ashley Hadam:

1. Defendants improperly prosecuted Mr. Ross criminally, under 21 U.S.C. § 844, and for a violation of his supervised release conditions, and caused him to be found guilty, for engaging in legal conduct, specifically, Mr. Ross's possession and use of marijuana obtained pursuant to a prescription, in violation of Mr. Ross's:

    a.  Eighth Amendment right not to be subject to cruel and unusual punishment;

    b.  Eighth Amendment right not to be prosecuted and punished based on his status as an addict;

    c.  Fifth Amendment right to due process;

    d.  Fourth and Fifth Amendment rights not to be subject to false arrest or imprisonment based on false information provided by or relied upon by the defendants; and

    e.  Right to be free of harassment.

2. Defendants, providing and/or relying on false information and trickery, caused Mr. Ross to relinquish a legal prescription for the medical use of marijuana, and thus denied him adequate medical care for a serious medical need, in violation of his Eighth Amendment right not to be subject to cruel and unusual punishment.

3.  Defendant USPOs violated Mr. Ross's Fourth Amendment right to be secure in his person and property, by requiring him to waive that right, as a condition of his supervised release, under duress, by threatening Mr. Ross with incarceration if he did not waive those rights.

4.  By requiring that Mr. Ross register as a sex offender as part of his criminal sentences, which results, under SORNA, in him being identified as a sex offender on a publicly accessible government website, defendants:

    a.  Interfered with Mr. Ross's right to freely travel between states;

    b.  Violated Mr. Ross's right to equal protection, as only sex offenders, and not other dangerous offenders, are subject to a registration requirement;

    c.  Violated Mr. Ross's Fifth Amendment right not to be twice punished for a single offense;

    d.  Exposed Mr. Ross to a sentence disproportionate to his offense of conviction; and

    e.  Gave effect to Congress's overreach under the Commerce Clause in enacting SORNA.

5.  Defendants are liable for negligence for their failure to prevent a cycle of incarceration by prosecuting Mr. Ross, an addicted individual, for drug-related offenses, placing him on supervised release during which they subjected him to drug tests, and then again punishing Mr. Ross for positive drug tests, in a cycle which defendants can, but neglected, to prevent.

6.  Defendants conspired to violate Mr. Ross's constitutional rights when they engaged in the conduct underlying Claim 1-5, as set forth above, under 42 U.S.C. § 1985.

As relief for his claims, Mr. Ross requests damages and an order directing his immediate release from incarceration.

## DISCUSSION

**I.   Immunity**

    A.   Judge Woodcock

Mr. Ross asserts claims for damages against Judge Woodcock. "[I]t is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions." Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019); see also Mireles

v. Waco, 502 U.S. 9, 11-12 (1991) (judicial immunity is overcome only for "actions not taken in the judge's judicial capacity" and "for actions, though judicial in nature, taken in the complete absence of all jurisdiction") (per curiam). "[A]bsolute judicial immunity means not just immunity from damages, but immunity from suit altogether." Zenon, 924 F.3d at 617 n.10 (citation omitted). Absolute judicial immunity precludes lawsuits for damages against federal judges for actions within "their judicial functions." Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 108 (1st Cir. 2015); see also Verogna v. Johnstone, 2022 DNH 009, 583 F. Supp. 3d 331, 337 (D.N.H. 2022), aff'd, No. 22-1364, 2022 U.S. App. LEXIS 37681, 2022 WL 19795808 (1st Cir. Nov. 14, 2022), cert. denied, 144 S. Ct. 135 (2023). Judicial immunity also precludes lawsuits against federal judges where the plaintiff seeks injunctive relief. See Verogna, 583 F. Supp. 3d at 337 (citing Bolin v. Story, 225 F.3d 1234, 1240 (11th Cir. 2000)).

To determine whether a judge is entitled to the protection of the judicial immunity doctrine, the Court determines "whether the judge's act was one normally performed by a judge, and whether the parties were dealing with the judge in his or her judicial capacity." Zenon, 924 F.3d at 617 (citing Stump v. Sparkman, 435 U.S. 349, 362 (1978)). All of the claims asserted against Judge Woodcock involve conduct taken while performing adjudicatory functions, such as conducting pretrial hearings, and presiding over Mr. Ross's trial and sentencing. Accordingly, Judge Woodcock is protected from suit by absolute judicial immunity. The district judge, therefore, should dismiss Claims 1, 2, and 4-6, to the extent Mr. Ross asserts those claims against Judge Woodcock.[3]

---

[3] To the extent any of the claims Mr. Ross asserts against Judge Woodcock concern actions actually undertaken by Judge Walker after July 19, 2023, the Court notes that it would recommend dismissal of claims against Judge Walker on the same basis it recommends dismissal of those claims against Judge Woodcock.

B.    Prosecutor McCormack

A government prosecutor performing functions "'intimately associated with the judicial phase of the criminal process,'" enjoys absolute immunity from lawsuits. Penate v. Kaczmarek, 928 F.3d 128, 135 (1st Cir. 2019) (quoting Forrester v. White, 484 U.S. 219, 226 (1988)); see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976)). Federal prosecutors are thus absolutely immune from suit for conduct undertaken in the exercise of their "core prosecutorial function of 'initiating a prosecution and . . . presenting the State's case.'" Penate, 928 F.3d at 135 (quoting Imbler, 424 U.S. at 431); see also Chan v. Cirilli, Civil Action No. 1:21-cv-11135-IT, 2022 U.S. Dist. LEXIS 211287, at *5-*7, 2022 WL 17156089, at *3 (D. Mass. Nov. 22, 2022) (explaining that doctrine of prosecutorial immunity applies to suit against federal officials) (citations omitted).

Here, Mr. Ross's allegations against AUSA McCormack describe acts taken in his official function as a prosecutor — specifically, bringing and pursuing a criminal charge against Mr. Ross. Accordingly, Attorney McCormack is shielded from the claims asserted against him in this action by absolute immunity, and the District Judge in this case should dismiss Claims 1, 2, and 4-6, to the extent Mr. Ross asserts those claims against AUSA McCormack.

C.    USPOs Turgenson, Laflin, and Hadam

"Judicial immunity," discussed above, "extends to other officers of government, whose duties are related to the judicial process." Barr v. Matteo, 360 U.S. 564, 569 (1958). Probation officers in the federal courts, while "engag[ing] in a role closely associated with the discretionary function of the decision-maker," here, a judge, are immune from suit for actions taken in that role. Namey v. Reilly, 926 F. Supp. 5, 8-10 (D. Mass. 1996). "As an 'investigative and supervisory arm of the court,'" a USPO "'is entitled to absolute immunity from suit in the performance of . . . her judicially-related functions.'" Marston v. Cook, C.A. No. 1:10-CV-00278-WES, 2010 U.S.

Dist. LEXIS 129925, at *8, 2010 WL 5092743, at *3 (D.N.H. Aug. 31, 2010) (quoting United States v. Davis, 151 F.3d 1304, 1306 (10th Cir.1998)), R&R adopted sub nom. Marston v. United States, No. 10-cv-278-WES, 2010 U.S. Dist. LEXIS 130525, 2010 WL 5090512 (D.N.H. Dec. 6, 2010); see also Benson v. Safford, 13 F. App'x 405, 407 (7th Cir. 2001) ("probation officers are absolutely immune from suits challenging conduct intimately associated with the criminal justice process); Tripati v. U.S. Immigr. & Naturalization Serv., 784 F.2d 345, 348 (10th Cir. 1986) (holding that when "the challenged activities of a federal probation officer are intimately associated with the judicial phase of the criminal process, he or she is absolutely immune from a civil suit for damages"). Additionally, where probation officers act in a prosecutorial role in court, they are protected by absolute prosecutorial immunity. See Penate, 928 F.3d at 135 (noting that the Supreme Court has taken a "functional approach" to absolute immunity from suit, which "looks to the nature of the function performed, not the identity of the actor who performed it." (quoting Forrester, 484 U.S. at 229)).

      To the extent Mr. Ross's claims against any of the defendant USPOs are based on the USPOs' actions in presenting information and evidence in Mr. Ross's supervised release violation proceedings, recommending a sentence for those violations, maintaining records of Mr. Ross as directed by the court, or "any other duty that the court may [have] designate[d]," the defendant USPOs are absolutely immune from suit. Similarly, to the extent USPO Hadam acted in a prosecutorial role during Mr. Ross's supervised release violation proceedings, she was entitled to absolute immunity. See Epps v. U.S. Att'y Gen., 575 F. Supp. 2d 232, 242 n.13 (D.D.C. 2008) (citing Farrish v. Miss. State Parole Bd., 836 F.2d 969, 974-75 (5th Cir. 1988)). For these reasons, the district judge should dismiss Claims 1-6, to the extent Mr. Ross asserts them against USPOs Turgenson, Laflin, and Hadam in this action.

D.    Illegality of Possessing of Marijuana

Mr. Ross argues that his possession and use of marijuana while he was on supervised release was legal because his use of marijuana was for medical purposes (to treat pain) and that the marijuana he used was obtained pursuant to a legal prescription from a licensed medical provider. The court addresses this argument separately as it appears Mr. Ross is alleging that defendants here should not receive the benefit of the immunities discussed above because, by causing him to be incarcerated for his use of what he contends is legal marijuana, defendants acted outside of their respective jurisdictions by finding that his use of marijuana was a crime under 21 U.S.C. § 844.

Under the Controlled Substances Act, 21 U.S.C. § 801, et seq. ("CSA"), which governs federal drug possession cases, marijuana is a Schedule 1 controlled drug. See 21 U.S.C. § 812, Schedule I(c)(10). As such, "federal law, through the CSA, makes it 'unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispose,' or possess marijuana." United States v. Sirois, 119 F.4th 143, 147 (citing 21 U.S.C. §§ 841(a)(1)), cert. denied, No. 24-875, ___ S. Ct. ___, 2025 U.S. Dist. LEXIS 1367, at *1, 2025 WL 951161, at *1 (Mem) (U.S. Mar. 31, 2025).

Mr. Ross asserts that § 844's language stating that "[i]t shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice . . .," provides an exception to the CSA which rendered his possession and use of marijuana legal. However, as marijuana is a Schedule I drug, federal law does not "recognize marijuana as medicinal." United States v. Pelletier, 1:06-cr-00058-JAW, 2022 U.S.

Dist. LEXIS 152701, at *16, 2022 WL 3682941, at *5 (D. Me. Aug. 25, 2022). The District of Maine has recently stated that:

> "[A]s a Schedule I drug, marijuana 'has no currently acceptable medical use in treatment in the United States' under federal law. 21 U.S.C. § 812(b)(1) (defining the characteristics of a Schedule I controlled substance); see also Gonzalez v. Raich, 545 U.S. 1, 14 [] (2005) ('By classifying marijuana as a Schedule I drug . . . the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of an [FDA] preapproved research study.' (citations omitted)). Hence, marijuana cannot be dispensed under a prescription from a licensed medical practitioner. See 21 U.S.C. § 829 (authorizing prescriptions of controlled substances listed on schedules other than Schedule I); United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 492 n.5 [] (2001) ('Unlike drugs in other schedules, see § 829, schedule I drugs cannot be dispensed under a prescription'). The Supreme Court has held that changes in state law that de-criminalize marijuana and/or permit its medical and recreational use do not impact the federal prohibition on possession of marijuana. See Gonzalez, 545 U.S. at 27 [] ('[T]he fact that marijuana is used 'for personal medical purposes on the advice of a physician' cannot serve as a distinguishing factor. The CSA designates marijuana as contraband for any purpose[.]' (emphasis in original) (citation omitted))."

Id., 2022 U.S. Dist. LEXIS 152701, at *16-*17, 2022 WL 3682941, at *5 (quoting United States v. Johnson, Crim. No. 10-10087-NMG, 2022 U.S. Dist. LEXIS 143364, at *4, 2022 WL 2657113 (D. Mass. Jul. 8, 2022)). Mr. Ross's view of the legality of his marijuana possession and use is inconsistent with federal law, and does not provide a basis to grant him relief in this case.

## II. Claims Challenging Criminal Cases

In the claims identified in this Report and Recommendation as Claims 1 and 3-6, Mr. Ross challenges the violation of supervised release proceedings resulting from: his use of marijuana, possession of an unauthorized cell phone and laptop, and an April 2023 possession of child pornography, and the 24-month sentence imposed in that proceeding. In those claims, he also

challenges the prosecution of the 2023 Criminal Case for possession of child pornography, and the 121-month sentence imposed in that proceeding.

"Plaintiffs are generally barred from litigating claims for damages that would necessarily imply the invalidity of a judgment of conviction and a sentence unless the judgment and sentence have been previously invalidated." Violette v. Baker, No. 2:19-CV-479-PJB, 2020 U.S. Dist. LEXIS 235427, at *4, 2020 WL 7356608, at *2 (D. Me. Dec. 15, 2020) (citing Heck v. Humphrey, 512 U.S. 477, 487 (1994)), R&R approved, 2021 U.S. Dist. LEXIS 43221 (D. Me. Mar. 8, 2021); see also Swan v. Barbadoro, 520 F.3d 24, 26 (1st Cir. 2008) (Heck rule applies to challenges to federal convictions asserted against federal officials); Hutchins v. Me. State Hous., No. 1:14-cv-00491-JAW, 2015 U.S. Dist. LEXIS 50428, at *13, 2015 WL 2250672, at *4 (D. Me. Apr. 16, 2015) (Heck rule applied to claims concerning validity of order revoking plaintiff's supervised release), R&R approved, 2015 U.S. Dist. LEXIS 62492, at *1, 2015 WL 2250672, at *1 (D. Me. May 13, 2015). Accordingly, the District Judge should dismiss Claims 1 and 3-6, as Mr. Ross's success on those claims would undermine the validity of his supervised release violation proceedings, the proceedings in the 2023 Criminal Case, and/or the sentences imposed in those proceedings.[4]

In addition to damages, Mr. Ross seeks release from his present incarceration. To the extent Mr. Ross seeks release by challenging the validity of his criminal conviction, violation of supervised release proceedings, or his sentence imposed in either proceeding, such claims "fall

---

[4] If the district judge accepts the undersigned magistrate judge's recommendation that Mr. Ross's claims be dismissed under the Heck rule, that dismissal should be without prejudice to his ability to bring those claims in the future if and when the proceedings underlying his claims are ever invalidated by a successful appeal or habeas corpus action.

12

within the 'core' of the writ of habeas corpus and thus must be brought in habeas.'" Trump v. J. G. G., 145 S. Ct. 1003, 1005 (2025) (citations omitted).

### III.  Conspiracy

In the claim identified above as Claim 6, Mr. Ross alleges that defendants are engaged in a conspiracy to incarcerate drug-addicted people and then to add to their sentences by subjecting them to drug tests when they are released from incarceration on supervision, and then sending them back to prison for positive drug tests.  He implies that there is financial motive to keep addicts in a cycle of incarceration, and that defendants here could interrupt the cycle, but choose not to. Stripped of conclusory allegations, Mr. Ross has not stated any facts which would support any claim arising out of these allegations against any defendants, and the district judge should therefore dismiss that claim, summarized above as Claim 6, from this action.

### Conclusion

For the foregoing reasons, the district judge should dismiss the Complaint in its entirety. Further, the district judge should dismiss Claims 1 and 3-6, as identified in this Report and Recommendation, without prejudice to Mr. Ross's ability to assert those claims, as appropriate, in a civil action if his violation of supervised release in the 2013 Criminal Case or conviction in the 2023 Criminal Case are invalidated in the future by a successful appeal or habeas corpus action.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The objection period may be extended upon motion. Only those issues raised in the written objections "'are subject to review in the district

court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

　　　　　　　　　　　　　　　　　　／s/ Talesha L. Saint-Marc
　　　　　　　　　　　　　　　　　　Talesha L. Saint-Marc
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

May 29, 2025

cc:　　Kevin Lee Ross, pro se